IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS EDWARD BIRMINGHAM | § | |
| TDCJ-CID NO.1244911, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-05-2743 |
| | § | |
| DOUGLAS DRETKE, *et al.*, | § | |
| | § | |
|     Defendants. | § | |

OPINION ON DISMISSAL

Plaintiff Thomas Edward Birmingham, a state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint, alleging violations of his civil rights under 42 U.S.C. § 1983. (Docket Entry No.1). He seeks compensatory and punitive damages, and injunctive and declaratory relief. (*Id.*). Defendants Gina M. Seville, M. Warner, and Dr. Owen Murray[1] have filed a motion for summary judgment (Docket Entry No.24), but plaintiff has not filed a response to the motion.

After a careful consideration of the pleadings, the entire record, and the applicable law, the Court will grant defendants' motion for summary judgment and dismiss this complaint with prejudice.

I. BACKGROUND

In his original complaint (Docket Entry No.1), plaintiff alleges that the following events precipitated the filing of the present civil rights complaint: Around 9:20 p.m., on March 1, 2005, plaintiff fell from his top bunk and broke his foot. He notified Correctional Officer Gina M. Seville, who told him that there was no one in the infirmary at that hour who could assess his injury and that

---

[1] The Court did not order service of process on the other parties named to this suit.

someone would have to be called. Officer Seville returned hourly to check on plaintiff. She told him that a sergeant would look at his foot and she indicated that she thought his foot was merely sprained. The next hour, she told him that a lieutenant would look at his foot. Around 1:00 a.m., Seville told plaintiff that he would have to wait until chow and then go to the sergeant's office. Seville told plaintiff that she would attempt to get crutches or a wheelchair to help him travel to the office. At 4:00 a.m. Seville let plaintiff out of his cell for chow and informed him that he would have to talk to the sergeant about crutches.

Plaintiff made his way down three flights of stairs to the main hallway, where he asked the hallway guard to call the infirmary for crutches. The guard indicated that plaintiff would just have to hop there. Plaintiff sat down on the floor and the guard called the sergeant.

When Sergeant Gregurek arrived around 4:00 a.m., she made a couple of phone calls and requested a wheelchair. Gregurek told plaintiff that she would place plaintiff in a wheelchair and move him to the day room where he could wait for the infirmary to open at 6:30 a.m. Soon after plaintiff was placed in the day room, another guard confiscated his wheelchair.

Around 9:00 a.m., plaintiff hopped to the infirmary. A nurse examined his foot and issued crutches. She informed plaintiff that no one would be available to look at his foot that day because it was a state holiday. She indicated that someone would x-ray it the next day.

X-rays taken on March 3, 2005, at the Wynne Unit showed a fracture. Medical providers placed plaintiff's foot in a metal half-splint and wrapped it with an ace bandage. Thereafter, on March 9, 2005, he was transported to an orthopedic clinic at the University of Texas Medical Branch ("UTMB") in Galveston, Texas.

X-rays taken at UTMB on March 9, reflected that the break to plaintiff's foot was unchanged and that the fracture was not healing. Dr. Warner, the treating physician, told plaintiff that his foot would heal best with surgery to screw the fractured bones together but because of UTMB's budget constraints, such elective surgery was not recommended. Warner placed the foot in a cast and ordered a follow-up examination in four weeks. When plaintiff returned, the foot showed no signs of healing. Warner, again, indicated that surgery was not possible because of budget constraints. Warner explained to plaintiff how the bone would likely knit back together and that such healing would result in an oversized bulge on his foot.

Plaintiff returned to UTMB on April 25, 2005, where Dr. Baker informed him that his foot was not healing. Baker again told him that surgery was not possible because of budget constraints. Baker also told him that his foot had only a thirty-three per cent chance of ever healing. Baker issued a fracture boot and ordered a follow-up examination in six weeks.

On May 18, 2006, plaintiff was interviewed by a grievance investigator who indicated that Dr. Julye would request that UTMB physicians perform surgery on plaintiff's foot, but that a unit provider could not force UTMB physicians to perform such surgery.

On June 9, 2005, plaintiff was again examined by Dr. Warner at UTMB, who indicated that the fracture was almost healed. Warner also indicated that a fracture boot was no longer needed and that the fracture should completely heal within ninety days. Warner did not order a follow-up examination.

When plaintiff's shower pass expired, he scheduled an appointment in the Wynne infirmary. During the examination, Physician's Assistant Isbell informed plaintiff that he should wait ninety days for his foot to heal. Plaintiff complained that he could feel the bones moving when he walked

and that he also had two broken toes on the same foot.  Isbell told him that all he could do was wait.

(*Id.*).

Based on this chronology, plaintiff complains that the following defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment, as follows:

1. Warden Thomas J. Prasifka promulagated an informal policy of deliberate indifference and failed to provide emergency response;

2. Lieutenant Doe, failed to act when notified that plaintiff needed emergency assessment and treatment;

3. Sergeant Lacey L. Gregurek was deliberately indifferent, failed to act, and failed to implement TDCJ assessment protocols and emergency services;

4. Correctional Officer Gina M. Seville was deliberately indifferent to his serious medical need and failed to provide access to emergency care;

5. Physician M. Warner of UTMB was deliberately indifferent to plaintiff's serious medical need by acting as a final financial policymaker for State with respect to medical affairs at hospital, and by denying necessary surgery based on budget constraints; and,

6. Dr. Baker of UTMB was deliberately indifferent by denying surgery due to budgetary constraints and by acting as a final financial policymaker for State with respect to medical affairs at hospital.

(Docket Entry No.1).  Plaintiff also seeks relief from:

1. Douglas Dretke, Executive Director of TDCJ-CID to institute any orders of injunction and ensure the Court's orders are carried out; and,

2 Dr. Owen Murray, in his official capacity as Facilities Director of UTMB-Correctional Managed Health Care, to ensure that all medical recommendations of the Court's order are carried out.

(*Id.*).

Defendants Seville, Warner, and Murray move for summary judgment on grounds that they are entitled to qualified immunity and Eleventh Amendment immunity.  (Docket Entry No.24).

II. <u>STANDARD OF REVIEW</u>

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

III. <u>DISCUSSION</u>

<u>A. Eleventh Amendment Immunity</u>

The Eleventh Amendment bars a suit in federal court by a citizen of a state against his own state or against a state agency or department. *Hughes v. Savell*, 902 F.2d 376, 377-78 (5th Cir. 1990). Eleventh Amendment immunity has a jurisdictional effect; it deprives a federal court of jurisdiction to hear a suit against a state. *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 342 (5th Cir. 1996). This immunity extends to suits for monetary damages against state officials in their official capacity. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 609 n. 10 (2001) (holding "[o]nly States and state officers acting in their official capacity are immune from suits for damages in federal court").

Because plaintiff's claims against all defendants in their official capacities as employees of the State of Texas are barred by the Eleventh Amendment*; see Will v. Michigan Dept of State Police*, 491 U.S. 58, 71 (1989) (suit not against official but state office); *Oliver v. Scott*, 276 F.3d 736, 742, 742 n. 5 (5th Cir. 2002); the Court lacks jurisdiction to consider such claims. Accordingly, all of plaintiff's claims for monetary damages against all defendants in their official capacity are subject to dismissal.

B. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations establish a constitutional violation, the court next considers whether the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002).

1. Personal Involvement

Plaintiff fails to state facts that would show that defendant Owen Murray was personally involved in the alleged constitutional violations as required under 42 U.S.C. § 1983. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (holding personal involvement in alleged constitutional deprivation is an essential element of a civil rights cause of action). Section 1983 does not create supervisory or *respondeat superior* liability. *See Alton v. Texas A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Individual officials may be liable only for implementing a policy that is "'itself a repudiation of constitutional rights' and 'the moving force of the constitutional violation.'" *Oliver,* 276 F.3d at 742 (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)). Plaintiff's pleadings fail to identify specific policies or state specific facts to show that defendant Murray implemented a policy with respect to the allegedly unconstitutional acts of any other defendant.

Likewise, plaintiff fails to state any facts that would show that defendants Douglas Dretke and Thomas J. Prasifka were aware of his broken foot or that they were personally involved in the alleged constitutional violations as required under 42 U.S.C. § 1983.

To the extent that plaintiff seeks monetary damages against defendants Murray, Dretke, and Prasifka in their individual capacities, he fails to show that he is entitled to such relief.

2. Eighth Amendment

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002); *see e.g., Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997) (holding an inmate's dissatisfaction with the medical treatment he receives does not mean that he suffered deliberate indifference); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991) (holding inmate's "disagreement with his medical treatment" not sufficient to show Eighth Amendment violation); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979) (finding "[m]ere negligence, neglect or medical malpractice is insufficient" to show Eighth Amendment violation); *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a ... failure to act reasonably").

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th

Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.* Assertions of inadvertent failure to provide medical care or negligent diagnosis, however, are insufficient to state a claim. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

a. <u>TDCJ Correctional Officers</u>

Plaintiff complains that Correctional Officer Gina Seville was deliberately indifferent to his serious medical need and that she failed to provide access to emergency care. (Docket Entry No.1). Plaintiff's pleadings, however, show that Seville did not obtain emergency care for plaintiff's injury because the infirmary was closed. She notified her superiors about plaintiff's injury and they indicated they would come to plaintiff's cell. She checked on plaintiff periodically throughout her shift. Although Seville's actions may have delayed treatment, her actions do not evince an intent to deny treatment or an intentional dereliction of duty.

To the extent that Seville's actions delayed plaintiff's treatment, plaintiff does not indicate that he suffered substantial harm from any delay attributable to Seville. Plaintiff reports that x-rays taken on March 9, 2005 at UTMB, showed that the break to his foot was unchanged and that the fracture had not begun healing. (Docket Entry No.1).

Likewise, plaintiff does not indicate that he suffered substantial harm from any delay in treating his injury that may be attributable to Lieutenant Doe or Sergeant Gregurek. To the extent that Doe and Gregurek failed to follow TDCJ procedures and protocol, such omissions alone do not give rise to a constitutional violation. *See Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989) (noting that a state's failure to follow its own rules or regulations, alone, does not establish a constitutional violation); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam)

(rejecting an inmate's claim that TDCJ's mere failure to follow an administrative rule violated his constitutional rights).

From the pleadings and the records before the Court, the Court concludes that plaintiff has not raised a genuine fact issue that these defendants were deliberately indifferent to his serious medical needs. Therefore, plaintiff has not demonstrated the violation of a constitutional right.

b. Drs. Warner and Baker

Plaintiff complains that Drs. Warner and Baker were deliberately indifferent to his serious medical needs because they elected not to perform surgery on his fractured foot due to budgetary constraints. Plaintiff's medical records,[2] however, show that the physicians were responsive to his medical needs; they ordered x-rays, examined his foot, and prescribed treatment over a period of several months. Although plaintiff speculates that his fracture did not heal because he still experiences pain and discomfort in that foot, x-rays taken at the Wynne Unit of TDCJ in August and October of 2005, show that the fracture had healed. (Docket Entry No.38, Part 4, pages 7-8).

---

[2] Nursing Assessment Protocol dated March 2, 2005, states that plaintiff's left foot was swollen on outside of foot with bruising. Plaintiff was given an extension for crutches and a one day cell lay-in. (Docket Entry No.38, Part 3, page 14). On March 3, 2005, x-rays showed a spiral fracture and Wynne medical staff sought an urgent orthopedic appointment. (*Id*., Part 4, page 9; Part 2, page 30). On March 10, 2005, plaintiff's foot was x-rayed at UTMB. The radiology report indicated a "[m]inimally displaced midshaft fracture of the 5th metatarsal." (*Id.*, Part 6, page 16). UTMB's Dr. Warner evaluated the fracture. (*Id*., pages 11-12). X-rays on April 7, 2005, showed "some remodeling but no significant healing." (*Id.*, page 15). The physician noted that the fracture was slowly healing. (*Id.*, page 8). X-rays three weeks later on April 28, showed minimal interval healing. (*Id.*, page 13). The physician noted the same, removed the cast and applied a fracture boot. (*Id.*, pages 6-7). X-rays on June 9, 2005, showed moderate interval healing, including osseous bridging and bony union. (*Id.*, page 14). The physician switched plaintiff to a post operative shoe. (*Id*., page 3). No follow-up was ordered. (*Id.*). On August 16, 2005, an x-ray of plaintiff's foot at the Wynne Unit showed a healed spiral fracture of the mid shaft of the 5th metatarsal. (*Id.*, Part 4, page 8). Another x-ray on October 11, 2005, showed the same with a slight deformity at the old fracture site. (*Id.*, page 7). On October 26, 2005, plaintiff's request for restrictions, a crutch, and a handicap shower pass were denied because his fracture had healed and there was no medical indication for the same. (*Id.*, Part 2, page 9).

Plaintiff's claims against UTMB physicians reflect nothing more than his disagreement with the medical treatment he received. Such claims are insufficient to show that Drs. Warner and Baker were deliberately indifferent to his serious medical needs, particularly in light of the record before the Court. *See Norton*, 122 F.3d at 291-92.

C. Equitable Relief

Because record reflects that plaintiff did not suffer a constitutional injury, his request for injunctive and declaratory relief will be denied.

IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Defendants' motion for summary judgment (Docket Entry No.24) is GRANTED.

2. Plaintiff's claims against all defendants are DENIED.

3. Plaintiff's complaint is DISMISSED with prejudice.

4. All pending motions are DENIED.

The Clerk will provide copies to plaintiff and defendants, and to the TDCJ-CID Office of the General Counsel, P.O. Box 13084, Capitol Station, Austin, Texas 78711, Fax: 512-2159.

It is so ORDERED.

SIGNED at Houston, Texas, on this 13th day of February, 2007.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE